# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 11, 2005

## DICKEY COTTON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26577     Carolyn Wade Blackett, Judge**

---

**No. W2004-00366-CCA-R3-PC  - Filed April 14, 2005**

---

The petitioner appeals from the denial of post-conviction relief and asserts in two issues that his guilty plea was unknowing and involuntary due to (1) trial counsel's ineffective representation, and (2) violations of Tennessee Rule of Criminal Procedure 11.  We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Autumn Chastain, Memphis, Tennessee, for the appellant, Dickey Cotton.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Gail Vermaas, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, Dickey Cotton, was indicted in January of 1999 on one count of rape of a child, a Class A felony, and one count of rape, a Class B felony.  The petitioner retained an attorney (hereinafter, counsel or trial counsel) prior to arraignment on June 21, 1999.  Ultimately, the petitioner entered into a plea agreement and entered a guilty plea on June 25, 2001.  The petitioner pled to two counts of rape and received an agreed sentence of eight years on each count, to be served concurrently.  On July 2, 2002,[1] a *pro se* post-conviction petition was filed.  An amended petition for post-conviction relief was filed July 31, 2003.  After a hearing, relief was denied by an order from the post-conviction court, as filed February 6, 2004.  Notice of appeal was timely filed on February 13, 2004.

---

[1] The original *pro se* post-conviction petition was delivered to prison officials on June 21, 2002.

On appeal, the petitioner presents two issues:

1) That due to trial counsel's ineffective representation, the petitioner entered an unknowing and involuntary guilty plea; and

2) That the petitioner's guilty plea was unknowing and involuntary due to violations of Tennessee Rule of Criminal Procedure 11.

The witnesses at the post-conviction hearing were the petitioner, Jack Cotton, Lori Bunch, and trial counsel.

The petitioner had at one time been married to the victim's mother and, after their divorce, returned to live with her and the victim on various occasions. The petitioner claimed that trial counsel had not discussed the specific dates of the alleged offenses and that the petitioner had not lived with the victim during a portion of the time alleged in the indictments. The petitioner stated he had provided trial counsel with names of "about a dozen" witnesses. Some of the witnesses lived in the house with the victim, and some were aware of bizarre behavior by the victim's mother. The petitioner claimed that some witnesses could testify that the victim had made accusations of sexual molestation against other individuals. Some witnesses knew a neighbor who had been under investigation for similar offenses. The petitioner said that he had tried to fire trial counsel. The petitioner claimed to have suffered a head injury that caused him to miss a trial date. The petitioner was incarcerated after this event. He stated that trial counsel did not contact him from February of 2000 until June 21, 2001, four days before the trial date. According to the petitioner, no witnesses had been contacted.

The petitioner said that, after discussion, he rejected a plea bargain involving fifteen years of incarceration. The petitioner said he was led to believe that he would stand trial on June 25, 2001. The petitioner stated that he accepted the plea offer of eight years because he felt he had no alternative, due to trial counsel's failure to prepare. When asked if it would have affected his decision to plead guilty if the judge had informed him of the nature of the charges and the minimum and maximum penalties, the petitioner answered that it was a possibility. The petitioner also complained that the trial court explained that his present counsel would remain in place if he chose to go to trial and would also serve as appellate counsel. The petitioner said that he did not hire another attorney due to a lack of funds. The petitioner had never been involved in the judicial process other than for traffic violations.

The petitioner's brother, Jack Cotton, testified that, while the petitioner was residing with him on the gulf coast, the victim's mother had made bizarre allegations about the petitioner attempting to pour gas down her chimney and kill the occupants of her home. Jack Cotton stated that he was never contacted by the petitioner's trial counsel, although he did receive a trial subpoena after the petitioner had already entered the guilty plea. He did not know the dates during which the petitioner resided with him.

Lori Bunch, the petitioner's sister, testified that the victim's mother was schizophrenic and had required hospitalization. Mrs. Bunch said that the victim's mother had told her about the

petitioner flying around in the mother's home, attacking her and the victim. Mrs. Bunch stated that the victim's mother had attempted to get two neighbor girls to make allegations of abuse against their father. Mrs. Bunch also knew of a neighbor who was under investigation on separate charges of molestation. Mrs. Bunch said she was unable to contact the petitioner's counsel to relay this information. She further stated that she had affidavits of witnesses which she had attempted to provide counsel, but he failed to contact her. Mrs. Bunch said that the petitioner resided with her during some of the period between February 1, 1998, and June 11, 1998, but she did not give specific dates or know where he resided otherwise.

The petitioner's trial counsel was questioned on direct examination by the petitioner's post-conviction counsel. Trial counsel agreed that he was retained by the petitioner. Counsel stated that the only documents he had available were the discovery provided by the State. Counsel said that he had not seen page two of a forensic report on the victim. The page that counsel denied receiving contained a narrative of the history provided by the victim. The narrative quoted the victim as reporting the last incident of abuse by the petitioner on September 1, 1998, and it had recurred repeatedly in the six months prior.

Trial counsel also denied having ever seen the sexual assault report prepared by the Memphis Police Department. An entry therein, dated October 9, 1998, quoted the victim as saying that the petitioner had raped her five or six times since February of 1997. On a separate page of the same report, the offense occurrences were listed as February 1998 - August 1998. The indictments alleged occurrence dates as February 1, 1998 - June 11, 1998,[2] and June 11, 1998 - September 2, 1998. Trial counsel admitted that he was unaware of date discrepancies as reported.

Trial counsel stated that the petitioner never told him that the petitioner was not living in the victim's home during the relevant time periods. Trial counsel contacted only one witness as provided by the petitioner, and that witness was Lori Bunch. Counsel stated that he had ongoing correspondence and conversations with Mrs. Bunch. Trial counsel stated that no affidavits were ever presented to him. He stated that he was aware the victim was a "slow learner" and that her mother was a "revolving door case" at Charter Lakeside Hospital. Trial counsel made no independent investigation of other claims of abuse by the victim. Trial counsel was given opportunity to interview the victim but chose not to because "it was obviously a very sensitive matter and that one has to take her feelings into consideration."

Margaret Stafford was the victim's grandmother who had allowed the petitioner and the victim's family to live in her house. Trial counsel issued a trial subpoena for Mrs. Stafford but never interviewed her. Likewise, trial counsel did not interview the petitioner's two sons who lived in the victim's residence.

During cross-examination, counsel stated that the petitioner had not advised him of any periods of time during the relevant dates of offense that he did not live with the victim. Counsel said

---

[2] The victim was thirteen years old on June 11, 1998.

that all witnesses provided him by the petitioner were character witnesses and were of no use in establishing a defense. Counsel formed this opinion from his conversations with the petitioner. Counsel said he knew that the State did not intend to use the victim's mother as a witness and, thus, he did not interview her. Counsel said that the petitioner had no legal defense available, only factual differences. According to counsel, the petitioner wanted to enter the guilty plea in exchange for the eight-year sentence. Counsel stated that he thoroughly explained the range of punishment and the options available to the petitioner and that the petitioner understood.

This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both, if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

The petitioner bears the burden of proving the factual allegations that would entitle petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct – unless the preponderance of the evidence establishes otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's conclusions of law – such as whether counsel's performance was deficient or whether that deficiency was prejudicial – are reviewed under a *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001) (citations omitted).

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the

petitioner can establish that: (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Black, 794 S.W.2d at 757. Neither the trial court nor this Court can speculate on what a witness's testimony might have been if introduced by counsel. Id.

The record reflects that trial counsel's preparation of the petitioner's defense was less than optimum. It appears that counsel relied entirely on discovery provided by the State and was unaware of certain documents relevant to the victim's allegations. However, the variances in dates of the uninvestigated documents were slight and insignificant. The record also reflects that trial counsel only interviewed one of the petitioner's suggested witnesses, Lori Bunch. The failure of counsel to interview the victim is also troubling. However, the petitioner failed to produce any witnesses at the post-conviction hearing that provided any more than vague allusions to possible exculpatory evidence. No specific facts were developed that would have enhanced the petitioner's defense.

There were various instances of contradictions in the testimony of the petitioner and counsel. The post-conviction court accredited counsel's testimony, and the evidence does not preponderate against that finding.

While trial counsel's quality of preparation and investigation is questionable, the petitioner has simply failed to prove prejudice. The proof at the post-conviction hearing was insufficient to establish a reasonable probability sufficient to create doubt as to the outcome or rendering the results fundamentally unfair. The petitioner failed to satisfy the second prong of Strickland, and we therefore agree with the post-conviction court that the petitioner did not suffer ineffective counsel.

In the second issue, the petitioner claims that his plea of guilty was made unknowingly and involuntarily as a result of violations of Tennessee Rule of Criminal Procedure 11. The specific violations cited by the petitioner are the failure of the trial court to: (1) advise on the nature of the charges; (2) advise on mandatory and minimum penalties; (3) advise that the court could ask questions of the petitioner under oath; and that (4) the trial judge stated that the petitioner's trial counsel would continue as counsel during a trial and an appeal.

The United States Supreme Court in Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1713, 23 L. Ed. 2d 274, 279 (1969), held that defendants must waive certain rights in order for their decision to plead guilty to be considered knowing and voluntary. These rights include the right to a jury trial, the right to confront witnesses, and the right against self-incrimination. Id. These rights cannot be validly waived without an intentional relinquishment, which cannot be presumed from a silent record. Id. To ensure guilty pleas are entered "knowingly and intelligently," Boykin instructs the trial court to discuss with the accused the consequences of the decision. Boykin, 395 U.S. at 244, 89 S. Ct. at 1712.

When a trial court fails to advise an accused of these rights, the burden shifts to the State to prove a constitutional plea. Johnson v. State, 834 S.W.2d 922, 925 (Tenn. 1992). However, the failure does not, in and of itself, entitle the defendant to relief. Id. The State may prove by clear and convincing evidence either substantial compliance with the advice requirement, by showing the defendant was made aware of his constitutional rights, or that the defendant independently knew of his constitutional rights, rendering the trial court's omission harmless. Id.

The standard for determining substantial compliance or harmless error necessarily requires inquiry into circumstantial factors surrounding the plea. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The relative intelligence of the defendant, the degree of his familiarity with criminal proceedings, the opportunity to confer with competent counsel regarding plea options, the extent of advice from counsel and the trial court regarding the charges faced, and the desire to avoid a greater punishment resulting from a jury trial are all relevant factors a trial court can use to find a "knowing" and "intelligent" plea. Blankenship, 858 S.W.2d at 904 (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

The Tennessee Supreme Court established guidelines for reviewing guilty pleas in State v. Neal, 810 S.W.2d 131, 137 (Tenn. 1991). The Court held that "absolutely literal compliance with the advice to be given is not required." Id. at 137. "Substantial compliance" would suffice as long as the "sense of the substance of the required advice . . . is [expressed to an accused prior to a plea of guilty]." Id.

The finding that a plea was knowing and voluntary, as required by Boykin, is a constitutional right and may be attacked collaterally. See Boykin, 395 U.S. at 243, 89 S. Ct. at 1712. Additional requirements of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) and Tennessee Rule of Criminal Procedure 11 are not constitutional issues and cannot be asserted collaterally. Johnson, 834 S.W.2d at 925. See Tenn. Code Ann. § 40-30-103.

The voir dire, as conducted by the trial judge, was as follows:

Q: [Defendant], you understand that you don't have to plead guilty today. You have a right to plead not guilty, go to trial in front of a jury, be represented by your lawyer, [trial counsel]. You could cross-examine witnesses. You could subpoena your own witnesses. You would testify in your own behalf although you'll not be required to. You would appeal the case if you lost it, be represented by [trial counsel] on appeal. You're giving up all of your trial and appellate rights by pleading guilty today. Do you understand that?

A: Yes, sir.

Q: Are you pleading guilty freely and voluntarily?

A: Yes, sir.

Q: Have you discussed your case thoroughly with [trial counsel]?

A: Yes.

Q: Do you have any questions or complaints about the manner in which he has represented you in this case?

A:        No, sir.
Q:        Do you have any questions at all about this guilty plea?
A:        No.
The Court:   Step down.

The facts supporting the guilty plea were recited by the State and stipulated by the petitioner's counsel. Sentence was then pronounced.

The voir dire by the trial judge encompassed the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury; the minimal standards under Boykin to ensure a knowing and voluntary plea. Any other alleged deficiencies would be beyond the scope of a post-conviction action. For reasons cited herein, we affirm that the violations of Tennessee Rule of Criminal Procedure Rule 11 are supervisory instructions that do not rise to constitutional dimensions. Consequently, this issue is without merit.

Based on the foregoing reasons, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE